**CITY OF TEMPLE, Appellant,**

v.

**Roy L. FULTON et al., Appellees.**

**No. 11615.**

Court of Civil Appeals of Texas.

Austin.

July 17, 1968.

Rehearing Denied Aug. 14, 1968.

Frank G. Tucker, City Atty., Temple, for appellant.

Edwards & Faulkner, John B. Faulkner, Waco, for appellees.

HUGHES, Justice.

The purpose of this suit was to disannex 549.992 acres of land which were annexed to the City of Temple in December 1963. Appellees, plaintiffs below, were Mr. and Mrs. Roy L. Fulton, Mr. and Mrs. D. F. Smith, Ross Barnes, Jr., Mrs. D. Furl, D. Furl, Mrs. C. E. Akin, Mr. and Mrs. W. H. Hillyard, Mr. and Mrs. M. H. Hillyard, Mr. and Mrs. John A. Gilley, Jr., Mrs. J. C. Fuller, Mr. and Mrs. Wilson J. Malcik, Mr. and Mrs. Edward W. Hurta and Mrs. D. C. Northington, who constituted a majority of the qualified voters residing in the annexed area and who owned at least 50% of its acreage as required by Art. 970a, Sec. 10, Vernon's Ann.Tex.Civ.St.

Appellees' petition, filed July 11, 1967, alleged that the City of Temple, since annexation of the described acreage, had failed "to provide the said area with

governmental and proprietary services, the standard and scope of which are substantially equivalent to the standard and scope of governmental and proprietary services furnished by the City of Temple in other areas of the City which have characteristics of topography, patterns of land utilization and population density similar to the area here in question." In particular, it was alleged that the City had not furnished water, sewer and fire protection, "among other services." The City answered by filing exceptions, a general denial and the following special allegations:

"Defendant would show that General Obligation Bonds have been sold for capital improvements to benefit the area in question after the said area was annexed in December, 1963; that such bonds are now held by innocent purchasers for value and same are outstanding obligations of the City of Temple.

5. Defendant would further show that it has provided police and fire protection on a regular and effective basis; that regular police patrols are made by the Police Department of the City of Temple in the area in question; that Police Department has received and answered complaints and requests for police protection; that the Fire Department of the City of Temple maintains constant and regular fire protection in the area in question and has answered numerous fire calls in the area in question; and that Street Department has maintained streets in the area in question.

6. Defendant would further show that it will provide water service and sanitary sewer services to the area in question through the same processes of development and on the same terms and conditions as said services are available to other similar or comparable areas of the City of Temple."

The record does not reflect a ruling on the special exceptions filed by the City and they will not be further noticed.

The case was tried to a jury which made these findings:

*"SPECIAL ISSUE NO. 1:* Do you find from a preponderance of the evidence, if any, that the City of Temple, Texas has failed to provide the area in question with governmental and proprietary services, the standard and scope of which are substantially equivalent to the standard and scope of governmental and proprietary services furnished by the City of Temple, Texas, if any, in other areas of the City which have characteristics of topography, patterns of land utilization and population density similar to the particular annexed area in question? .

ANSWER:    Yes

*SPECIAL ISSUE NO. 2:* Do you find from a preponderance of the evidence, if any, that proceeds from the sale of general obligation bonds have been expended by the City of Temple, Texas, for capital improvements to serve the particular annexed area in question after December, 1963?

ANSWER:    No "

Judgment, based on this verdict, was rendered disannexing the area in suit.

Appellant has three points of error, the first two, jointly briefed, are that the trial court erred in not granting its motion for judgment notwithstanding the verdict because there was no evidence to support the answer of the jury to special issue No. 1, and that the trial court erred in not granting it a new trial because the evidence was insufficient to support the answer of the jury to this issue.

The evidence is undisputed that since annexation the City of Temple has laid no water or sewer lines in this area which is wholly without such services except

as provided by individual owners for themselves, and that the City has furnished no garbage service to the area and has installed no fire hydrants.

As to the water and sewer service, there is evidence that the City would furnish these services if the residents of the area would pay the costs required by City ordinances.

There is evidence that both before and after annexation of this area the police department of the City had on a few occasions answered calls from the area.

There is evidence that prior to annexation City pumper trucks would answer fire calls from this area and that the County reimbursed the City for this service. After annexation this service was furnished by the City but from a fire station recently constructed nearer to the annexed area.

There is evidence that there is one paved or hard surfaced road in the annexed area which was constructed and maintained by the County prior to annexation and which was maintained by the City after annexation.

From the foregoing evidence it is obvious that the City since annexation of this area has furnished its inhabitants with little, if any, services, especially services which it was not already receiving.

The substance of these points, however, is, as we understand them, that notwithstanding the paucity of services extended this annexed area for retaining the privilege of taxing it appellees cannot succeed in withdrawing from the City because they have failed to find another similar area in the City which has been better treated.

Sec. 10, subd. A of Art. 970a provides, in part:

"From and after the effective date of this Act, any city annexing a particular area shall within three (3) years of the effective date of such annexation provide or cause to be provided such area with governmental and proprietary services, the standard and scope of which are substantially equivalent to the standard and scope of governmental and proprietary services furnished by such city in other areas of such city which have characteristics of topography, patterns of land utilization, and population density similar to that of the particular area annexed."

After stating the procedural requirements for bringing a suit for disannexation, Sec. 10, subd. A continues:

"Upon hearing of the case, if the district court finds that a valid petition was filed with the city, that the particular annexed area is otherwise eligible for disannexation under the provisions of this Section, and that the standard and scope of governmental and proprietary services provided or caused to be provided to such particular annexed area are not substantially equivalent to the standard and scope of governmental and proprietary services provided or caused to be provided other areas of such city having charactistics of topography, patterns of land utilization and population density similar to that of the particular annexed area, it shall enter an order disannexing such particular annexed area. Provided, however, that the right of disannexation provided for in this Section shall not be available to any particular annexed area which was lawfully within the city limits of a city at the time of the approval or sale of any general obligation bonds of the city if proceeds therefrom have been expended for capital improvements to serve such particular annexed area, so long as any such bonds are outstanding."

We will quote the testimony upon which appellees rely to sustain the jury finding to special issue No. 1:

"MR. JOHN A. GILLEY, JR.:

Q All right, sir. Do you know, Mr. Gilley, other areas of the City of Temple,

Texas, of a similar topography or land surface, and of similar land utilization or a similar land use and a similar population density which are furnished these items of governmental and proprietary services, such as water, sewer and fire hydrants and garbage, that you are not getting? Do you know other areas that are similar in Temple?

A Yes, there are some that are—of course, they are developed areas that they are furnishing.

Q All right, what areas are you speaking of?

A Well, of course, Meadow Oaks and out in that area."

"MR. ROY L. FULTON:

Q All right, sir. Now, Mr. Fulton, do you know other areas of the City of Temple which are similar in topography, land surface, land usage, or land utilization and population density, where the governmental and proprietary services are furnished, whereas, they are not in your area?

A Yes, sir.

Q And what area would that be?

A Well, you want me to show you on the map?

Q Yes, sir, if you would. Just walk around there and show us where the governmental services are furnished that are similar to your area out there.

A Well, like I said, I build houses.

Q The Jury can't see.

A As Mr. Gilley said, this is our area here. Now, geographically, from the municipal building, like the crow flies, we are—now, here is Terrace Gardens way out here. By this, on your cars, this is a mile—no, it's two miles. It's two miles further out. This is over on 31st Street. And this is another mile on back here in Meadow Oaks. And Western Hills—now, this area,

when Mr. Barnes owned it, didn't have nothing but his home on it, and then eventually they got the water out there; and, of course, then it was developed. In other words, land along a farm area, you know, can't develop without water and sewer. But this is an area here and you can see all these houses here.

Q And where is the Western Hills area?

A Western Hills, then, would be way up here on Highway 36 back in this area in here.

Q All right. And would that be a comparable or similar area to your area?

A Geographically from town, yes, sir, it would.

Q All right, sir. And do you know whether or not the governmental and proprietary services of water, sewer, fire hydrants, garbage collection, street and roadway maintenance, are furnished by the City of Temple, Texas, to these areas of Terrace Gardens, Meadow Oaks and Western Hills?

A They have them all.

Q All right, sir. Do you know any area in the City of Temple that does not have garbage collection other than your area?

A No, sir."

"MR. WILSON J. MALCIK:

Q All right, sir. Mr. Malcik, do you know other areas in the City of Temple, Texas, where the governmental and proprietary services of water, sewer, fire hydrants, garbage collection, are done, which are similar in topography, land utilization and population density, to this particular area that we are talking about?

A Well, I would say Terrace Gardens and probably Western Hills. And as to the—as to how thorough this garbage pick up is, I couldn't witness to that

positively, but I assume that they have it. I see them over in the area in my line of work.

Q All right. And these services are not furnished in your area?

A They are not."

"MR. M. H. HILLYARD:

Q All right. Do you know other areas in the City of Temple which have these governmental and proprietary services of water, sewer, fire hydrants, garbage collection and street and roadway maintenance which are similar in topography or land surface and land use and population density, to the particular area out there on the South 5th Street road?

A Well, I've heard them say that they have it, but I don't know anything about—and some of them ask why we didn't have it and I told them I didn't know.

Q All right, sir. What area are you talking about there?

A Well, some of my friends in Meadow Oaks and other parts, in the outlying parts, have asked me why we didn't have it.

Q All right, sir. And they have those services out there?

A Yes."

Mr. Gilley testified that he owned 26 acres and that his wife owned an interest in 155 acres, all farm land, located in the area in suit.

Mr. Fulton testified that he owned 85 acres in the area and that he was a farmer and carpenter.

Mr. Malcik testified that he owns 1½ acres in the area. He is in the air conditioning business.

Mr. Hillyard lives next to his father and helps him farm his land. He also has other employment.

■ It is our opinion that this evidence viewed most favorably to appellees does not contain any evidence from which the jury could make the statutory comparison required by Sec. 10, subd. A of Art. 970a and that there is no evidence to sustain the answer of the jury to special issue No. 1.

■ All that we can infer from the record is that this 550 acre tract is principally farm land and that its population is not more than 40 qualified voters. While this evidence may be sufficient to show the population density, topography and utilization of the 550 acre tract, the record is devoid of evidence of other areas in the City of Temple where similar conditions exist. We feel compelled to sustain appellant's first two points. In doing so, we point out that the Legislature has made very stringent requirements for disannexation. We have no doubt but that they were knowingly made. Disannexation freely or easily obtained would be disruptive of municipal stability. No disannexation could be possible without legislative authority and the courts can grant disannexation only when the statutory requirements are substantially met.

Since this case must be reversed, we will not render judgment for the reason that we are not completely satisfied that the facts of the case have been completely developed.

In view of another trial and in the event the deficiency in the evidence noted above is overcome, we express our views briefly in respect to appellant's third point which is that since the City of Temple had sold general obligation bonds which were outstanding and that some of the proceeds had been expended for capital improvements to serve the 550 acre tract, disannexation could not

be granted under the provisions of Sec. 10, subd. A, Art. 970a.

■ There was some road maintenance with the 550 acre tract. This was not capital improvements. Mr. Carl Pearson, public works director for appellant, so testified.

The other two expenditures claimed to be capital improvements to serve this particular area were for right of way for a highway loop which skirted a portion of this 550 acre tract and intersected Interstate Highway 35, and a fire station built near but not on the tract.

It is our opinion that these improvements, while capital, were not constructed to serve such particular area although they would incidentally be of some service to such area.

We have not been cited any cases directly in point. Appellees have cited the following authorities which have been helpful: Burton v. Town of Sheridan, 80 Colo. 361, 251 P. 725 (1926), Reichelt v. Town of Julesburg, 90 Colo. 258, 8 P.2d 708 (1932), and Industrial Commission v. Kokel, 108 Colo. 353, 116 P.2d 915 (1941) all by the Supreme Court of Colorado.

■ To have meaning the statute must distinguish between improvements special to the particular area and those improvements which the particular area enjoys along with other areas. One test, suggested by the above authorities, is whether the improvements would have been made regardless of whether the particular area was in or out of the municipality. Under this test, and under this record, neither the loop nor the fire station would qualify as capital improvements to serve the 550 acre tract, since there is no evidence that their construction depended on inclusion of this area in the City. It is conceivable that evidence could be introduced and findings made which would alter this conclusion.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.